**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 19-cv-01599-CMA
(Criminal Action No. 17-cr-00123-CMA-1)

UNITED STATES OF AMERICA,

Plaintiff/ Respondent,

v.

DAMIAN MARC SMITH,

Defendant/ Movant.

---

**ORDER DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255**

---

This matter is before the Court on Defendant Damian Marc Smith's Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. (Doc. # 63.) For the following reasons, the motion is denied.

## I. BACKGROUND

Mr. Smith pleaded guilty in June 2017 to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and ((b)(2). (Doc. # 26.) The Court sentenced him to 97 months in prison and 10 years of supervised release. (Doc. # 47 at 2–3.) Mr. Smith filed a notice of appeal; however, the Tenth Circuit dismissed the appeal on the Government's motion to enforce the appeal waiver in Mr. Smith's plea agreement. (Doc. ## 61, 62); *United States v. Smith*, 733 F. App'x 448, 451 (10th Cir. 2018) (unpublished).

Mr. Smith now contends that his sentence should be vacated on the grounds that he was prejudiced by prosecutorial misconduct and that he received ineffective assistance of counsel. (Doc. # 63 at 4.)

## II. LEGAL STANDARDS

### A. STANDARD OF REVIEW FOR § 2255 MOTIONS

Under 28 U.S.C. § 2255, a prisoner in federal custody may challenge his sentence on the basis that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The reviewing court must set aside the conviction if it determines that the sentence is unconstitutional or unlawful. 28 U.S.C. § 2255(b). However, if the motion and other documents before the court "conclusively show that [the d]efendant is not entitled to relief," the court may deny the motion without an evidentiary hearing. *United States v. Bernhardt*, No. 96-CR-203-WJM, 2020 WL 2084875, at *1 (D. Colo. Apr. 30, 2020); *see also Hedman v. United States*, 527 F.2d 20, 21 (10th Cir. 1975).

### B. PRO SE STANDARD OF REVIEW

Because Mr. Smith is proceeding *pro se*, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, the Court is "not required to fashion [a d]efendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991)). "It is [not] the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Hall*, 935 F.2d at 1110.

## III. DISCUSSION

### A. PROSECUTORIAL MISCONDUCT

Mr. Smith first argues that his sentence must be vacated because he was prejudiced by several instances of prosecutorial misconduct, including the Government (1) submitting a false statement to the Court referring to "hundreds of pages of chats with others" regarding Mr. Smith's sexual attraction to children; (2) failing to follow explicit instructions to move to decrease the offense level until the sentencing hearing; (3) mischaracterizing statements from Mr. Smith's therapy and evaluation; and (4) making false statements about evidence at sentencing. (Doc. # 63 at 5–8.) The Government argues that all of Mr. Smith's prosecutorial misconduct claims are procedurally defaulted and, even if the Court were to assess them on the merits, Mr. Smith's allegations are insufficient to establish claims of prosecutorial misconduct. (Doc. # 66 at 4.)

#### 1. Procedural Default

A motion to vacate pursuant to 28 U.S.C. § 2255 is not available to test the legality of matters that should have been raised on direct appeal. *United States v. Bolden*, 472 F.3d 750, 751 (10th Cir. 2006). If a defendant fails to litigate an issue on direct appeal that could have been raised, he is barred from raising the claim in a § 2255 motion unless he "can show cause for his procedural default and actual prejudice resulting from the alleged error[], or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Allen*, 16 F.3d 377, 378 (10th

Cir. 1994). "The fundamental miscarriage of justice exception to procedural default is a markedly narrow one, implicated only in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012) (internal quotation marks and brackets omitted).

In this case, Mr. Smith asserts that he did raise his prosecutorial misconduct claims on direct appeal, and that they "were not considered as direct appeal was dismissed without prejudice due to appeal waiver." (Doc. # 63 at 4.) Mr. Smith's plea agreement included a waiver of appeal providing that he "knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; or (2) the government appeals the sentence imposed." (Doc. # 26 at 2.) The appeal waiver further provides that Mr. Smith knowingly and voluntarily waived the right to challenge his prosecution, conviction, or sentence in any collateral attack unless "(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct." (*Id.*)

Upon reviewing Mr. Smith's prosecutorial misconduct claims and his plea waiver, the Tenth Circuit noted that "he reserved the right to bring a collateral proceeding asserting prosecutorial misconduct claims, limited to those that 'are available in a collateral attack.'" *Smith*, 733 F. App'x at 450. However, the court declined to review Mr. Smith's prosecutorial misconduct claims on direct appeal, concluding that "[t]o the

extent he seeks to bring such claims in this direct appeal, rather than a collateral proceeding, they fall within the scope of his waiver of the right to directly appeal from matters pertaining to his prosecution, conviction, and sentence." *Id.* The court then reviewed the circumstances of Mr. Smith's plea waiver, concluded that Mr. Smith's waiver was knowing and voluntary, and dismissed Mr. Smith's claims without prejudice. *Id.* at 450–51. The court noted that Mr. Smith could file a § 2255 motion alleging ineffective assistance of counsel or "seeking collateral review of any other matters permitted to be asserted on collateral review under the terms of his plea agreement," but the court expressed no opinion on whether those matters included Mr. Smith's prosecutorial misconduct claims waived on direct appeal. *Id.*

Although Mr. Smith's plea waiver appears to permit him to raise prosecutorial misconduct claims on collateral attack, the Court's hands are tied because prosecutorial misconduct claims are procedurally barred unless litigated first on direct appeal. *See United States v. Zander*, 723 F. App'x 617, 619–20 (10th Cir. 2018) (unpublished) (concluding that prosecutorial misconduct claims not raised on direct appeal were procedurally barred); *United States v. Velarde*, 683 F. App'x 688, 690 (10th Cir. 2017) (unpublished) (rejecting movant's argument that prosecutorial misconduct claims should be brought on collateral review and observing that "[c]riminal defendants routinely include claims about the conduct of the prosecution in their direct criminal appeals"). Mr. Smith knowingly and voluntarily waived his right to bring any such claims on direct appeal. *See Johnson v. United States*, 838 F.2d 201, 204 (7th Cir. 1988) ("[A] waiver of a right to appeal surrenders all claims that could have been raised on appeal."). The Court therefore concludes that Mr. Smith cannot now assert those same claims on

collateral attack without a showing of cause and prejudice or a fundamental miscarriage of justice.

Mr. Smith does not provide any explanation or argument as to why his prosecutorial misconduct claims should now be addressed after the Tenth Circuit determined he waived them. For example, Mr. Smith does not appear to allege that his counsel was ineffective with respect to his appeal waiver or his direct appeal. *See United States v. Harms*, 371 F.3d 1208, 1211 (10th Cir. 2004) ("A meritorious claim of ineffective assistance of counsel constitutes cause and prejudice for purposes of surmounting the procedural bar."). He also does not allege that he learned of any incidents of prosecutorial misconduct **after** judgment entered and his appeal was dismissed. *See Zander*, 723 F. App'x at 619 (rejecting a movant's argument that he had cause for not bringing his claims on direct appeal where "the factual predicate for all his claims could be found in the existing record"). Moreover, the fundamental miscarriage of justice exception does not apply because Mr. Smith expressly challenges only his sentence, not his conviction. (Doc. # 63 at 13) ("I am not seeking to withdraw my guilty plea, nor do I wish a dismissal, reversal, or remand of my conviction."); *see McGaughy*, 670 F.3d at 1159 (explaining that the fundamental miscarriage of justice exception is markedly narrow and implicated only in cases of actual innocence). Accordingly, the Court finds that Mr. Smith's prosecutorial misconduct claims are procedurally barred.

2. Allegations are Insufficient to Establish Prosecutorial Misconduct

Even if Mr. Smith's prosecutorial misconduct claims are not procedurally barred, the Court finds that his claims fail on the merits.

When a petitioner does not allege that a prosecutor's conduct infringed on a specific constitutional right, the Court applies the standard articulated in *Donnelly v. DeChristoforo*, 416 U.S. 637, 642–48 (1974). Under *Donnelly*, "[p]rosecutorial misconduct does not warrant federal habeas relief unless the conduct complained of is so egregious as to render the entire proceeding against the defendant fundamentally unfair." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999). The Court evaluates "the prosecutor's conduct in the context of the whole trial" and makes its determination "considering the totality of the circumstances." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998).

*a. References to Chats*

First, Mr. Smith contends that the Government engaged in misconduct by falsely stating in its Response to Defendant's Motion for Statutory Sentence and Sentencing Statement that Mr. Smith "expressed desires to act on [his sexual attraction to children] in the course of hundreds of pages of chats with others." (Doc. # 43 at 11.) At the sentencing hearing, the Court initially stated that Mr. Smith's conduct, including his "expressed desires to act on [his sexual attraction to children] in the course of hundreds of pages of chats with others" was "of real concern to this Court." *See* (Doc. # 59 at 19.) When defense counsel immediately objected to allegations of chats, counsel for the Government conceded, "[T]hat is an error at the end of our statement. There were no chats in this case. I apologize." (*Id.*) After clarifying, the Court instructed the parties to "disregard my comments" regarding any chats. (*Id.* at 20.)

Mr. Smith argues that the Government's inclusion of this false statement "for 9 full days . . . without making any effort to correct it" rises to the level of prosecutorial

misconduct. (Doc. # 63 at 5.) The Court disagrees, particularly given that the Government corrected its error at sentencing and the Court then explicitly disregarded any reference to chats. The Government's reference to chats did not render Mr. Smith's entire proceeding fundamentally unfair. *See Griffin v. Workman*, 318 F. App'x 670, 672 (10th Cir. 2009) (unpublished) (affirming the district court's conclusion that a prosecutor's statements did not render the entire proceeding fundamentally unfair).

*b. Delay in Filing a Motion to Decrease Offense Level*

Next, Mr. Smith contends that the Government failed to follow court instructions to file a Motion to Decrease Offense Level at least 14 days before the sentencing hearing. (Doc. # 63 at 5.) At the sentencing hearing, the Court observed that it had not received any motions for a decrease in offense level. (Doc. # 59 at 3.) Counsel for the Government apologized, saying "I thought I had done that." (*Id.*) The Government then made an oral motion for a decrease in offense level at the sentencing hearing, and that motion was granted. (*Id.* at 11.)

Again, the Court disagrees with Mr. Smith that the Government's delay in moving to decrease the offense level rises to the level of prosecutorial misconduct. Mr. Smith was not prejudiced by the delay because the Government ultimately did move for a decrease in offense level at the sentencing hearing, and the Court granted that oral motion. Therefore, the Court finds that Mr. Smith again fails to demonstrate that his proceeding was rendered fundamentally unfair.

*c. Mischaracterizing Therapy and Evaluation Statements*

Mr. Smith next argues that the Government "prejudicially misrepresented" a number of facts and statements relating to his therapy sessions and psychosexual

evaluation. (Doc. # 63 at 6.) Specifically, Mr. Smith takes issue with the Government's statement that "defendant denied to therapists any interest in child pornography." (*Id.*) Mr. Smith explains that he had not yet spoken to his lawyer when he met with his therapist and was not sure whether "it would be legally prudent to disclose, rather than trying to actively hide, minimize, or deny my addiction." (*Id.*) Further, Mr. Smith argues that the Government distorted evidence from his other therapy sessions and psychosexual evaluation to present a negative and false view that overlooked the fact that Mr. Smith "sought treatment" and "was up-front with treatment providers about [his] charges once [his] attorney had explained the risks of disclosure." (*Id.*)

As an initial matter, the Court notes that Mr. Smith does not challenge the truth of the statement in the Presentence Investigation Report ("PSR") that he "denied having any interest in child pornography" to his therapist. Rather, he offers an explanation as to **why** he denied that interest before speaking with his attorney. It follows that the Government did not engage in misconduct by relying on an accurate statement from the PSR. Further, after reviewing the record, the Court is satisfied that none of Mr. Smith's therapy evaluations were so mischaracterized or distorted by the Government as to render Mr. Smith's sentencing, or his entire proceeding, fundamentally unfair.

*d. Statements Mischaracterizing Evidence*

Finally, Mr. Smith argues that the Government made claims about the evidence relating to Mr. Smith's pornography collection that were exaggerated, confusing, misleading, overblown, and false. (Doc. # 63 at 8.) Essentially, Mr. Smith contends that he possessed less child pornography than what the Government claimed, and he

argues that the Government's purported exaggeration of the extent of his child pornography collection prejudiced him during sentencing. (*Id.*)

The Court notes that in Mr. Smith's plea agreement includes the following stipulated facts:

> Smith had a laptop and several external hard drives full of child pornography. The forensic analysis of the computer and hard drives revealed that the laptop had over 160,000 images and 1,032 videos. 606 uTorrent files were found on the laptop, 293 of those were indicative of child pornography. One had drive had over 15,000 images of child pornography, sorted into files . . . .

(Doc. # 26 at 10.) Further, the agreement provides that Mr. Smith admits "that the offense involved more than 600 images" of child pornography. (Doc. # 26 at 11.) In light of these stipulated facts, and having reviewed the record, the Court does not find that any statement by the Government relating to Mr. Smith's child pornography collection was so false and prejudicial as to render his criminal proceeding fundamentally unfair.

For the foregoing reasons, the Court finds that Mr. Smith's prosecutorial misconduct claims are procedurally barred, and, in any event, Mr. Smith fails to demonstrate that any conduct by the Government resulted in a fundamentally unfair criminal proceeding.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Smith next raises several claims of ineffective assistance of counsel, including that his counsel (1) made several errors regarding sentencing-level motions and objections; (2) gave ineffective advice relating to Mr. Smith's guilty plea; and (3) failed to collect evidence and gave ineffective advice during sentencing. (Doc. # 63.)

A defendant claiming to have received ineffective assistance of counsel must show that (1) his attorney's performance was deficient; and (2) the attorney's deficient

performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a "strong presumption" that counsel's performance "falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish deficient performance, Mr. Smith must show that his attorney's representation "fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688. To establish prejudice, Mr. Smith must show that there is a reasonable probability that, absent counsel's errors, "the result of the proceeding would have been different." *Id.* at 694.

1. Motions and Filings

Mr. Smith alleges that his counsel was ineffective with respect to "motions and filings" in three separate ways: by (1) failing to object to the Government's incorrect statement about chats in a timely way; (2) failing to object to a 2-point enhancement for distribution; and (3) failing to "notice or point out" the Government's delay in moving to reduce the offense level. (Doc. # 63 at 10.)

With respect to Mr. Smith's first and third complaints, the Court finds that Mr. Smith was not prejudiced by either his counsel's delayed objection to the Government's incorrect statement about chats or failure to "notice or point out" that the Government had not yet moved to reduce the offense level by the time of the sentencing hearing. These alleged oversights did not affect Mr. Smith's sentence in any way because (1) the Government conceded its reference to chat was mistaken and the Court disregarded any such reference; and (2) the Government moved to reduce the offense level at sentencing and its motion was granted. Because Mr. Smith was not prejudiced, Mr. Smith cannot establish that his counsel was ineffective.

The Court also rejects Mr. Smith's second argument that his counsel was ineffective with respect to motions and filings by failing to object to a 2-point enhancement for distribution applied at sentencing, "despite the fact that the distribution charge was dropped." (Doc. # 63 at 10.) The Tenth Circuit has "routinely permitted a district court to enhance a defendant's sentence using uncharged conduct proven to the court by a preponderance of the evidence." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1131 (10th Cir. 2006). Although the Government dismissed the distribution charge, Mr. Smith admitted in his plea agreement "that the offense involved the distribution of child pornography." (Doc. # 26 at 11.) The Court finds that it was not objectively unreasonable for Mr. Smith's counsel to decline to object to an enhancement based on conduct that Mr. Smith admitted and stipulated to in his plea agreement.

2.  Advice Related to Guilty Plea

Mr. Smith next contends that his counsel was ineffective because Mr. Smith "provided unsatisfactory answers" at the change of plea hearing "on the poor advice and partial answers" he had received from defense counsel. (Doc. # 63 at 10.) Mr. Smith also claims that defense counsel led him to believe he had no viable defense and, although "no promises were made," defense counsel led him to believe he would have a lower sentence. (*Id.* at 11.)

With respect to any alleged ineffective assistance of counsel regarding Mr. Smith's guilty plea, the Court finds it dispositive that Mr. Smith explicitly does not challenge the plea itself. He states:

> I'd like to be extra clear: I am not seeking to withdraw my guilty plea, nor do I wish a dismissal, reversal, or remand of my conviction. I only ask the court to look beyond the misconduct of the prosecution and the

> incompetence of my defense to determine what a just and sufficient sentence might actually be in my case.

(*Id.* at 13.) Generally, in order to satisfy *Strickland*'s prejudice requirement, Mr. Smith would need to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). However, because Mr. Smith does not challenge his guilty plea, it is unclear to the Court what, if any, prejudice Mr. Smith is alleging with respect to his counsel's plea advice. The Court therefore finds that Mr. Smith has not established that his counsel's performance was ineffective regarding his guilty plea.

3. Evidence and Advice for Sentencing

Finally, Mr. Smith claims that his counsel was ineffective by failing to collect evidence and giving unsound advice that resulted in "a highly sanitized PSR that failed to help the court determine a suitable sentence." (Doc. # 63 at 11.) Mr. Smith first argues that his counsel "declined to ask for any forensic analysis of the evidence" to "rebut the prosecution"; however, Mr. Smith does not explain how any such forensic analysis would lend to a reasonable probability that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Although the Court must liberally construe Mr. Smith's *pro se* petition, it is "not required to fashion [Mr. Smith's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *Fisher*, 38 F.3d at 1147. Mr. Smith's conclusory allegations regarding forensic analysis are insufficient to establish that his counsel was ineffective.

Mr. Smith also contends that "a number of traumatic events were entirely skipped at the presentencing interview at [his] attorney's advice," including Mr. Smith's childhood

sexual trauma, his father's abandonment of the family in a foreign country, and Mr. Smith's binge drinking in his teens and twenties. (Doc. # 63 at 11.) The Court notes that every topic Mr. Smith claims should have been included in the presentencing interview nevertheless appeared before the Court prior to the sentencing hearing. *See* (Doc. # 32 at ¶ 44) (physical abuse); (*Id.* at ¶¶ 43, 45) (father's abandonment of family in Indonesia); (*Id.* at ¶ 63) (first drinking alcohol at age 12); (Doc. # 36 at 3; Doc. # 44-1 at 5, 9) (unusual exposure to sexual activity at a young age); (Doc. # 44-1 at 9) ("forced" sexual intercourse at age 12). Therefore, the Court finds that Mr. Smith has not shown how his attorney's advice with respect to the presentencing interview prejudiced him.

Because Mr. Smith has not demonstrated either that his counsel's performance was deficient or that it prejudiced him at sentencing, the Court finds that Mr. Smith's counsel was not ineffective.

### C. CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), the Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." Such a showing is made only when "a prisoner demonstrates 'that jurists of reason would find it debatable' that a constitutional violation occurred, and that the district court erred in its resolution." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court will not issue a certificate of appealability in this

case because Mr. Smith has not made a substantial showing of the denial of a constitutional right.

## IV. CONCLUSION

For the foregoing reasons, Mr. Smith's Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 (Doc. # 63) is DENIED. It is

FURTHER ORDERED that no certificate of appealability will issue because Mr. Smith has not made a substantial showing of the denial of a constitutional right.

DATED: March 25, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge